IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:06-CR-147 |
| | ) | |
| CHRISTOPHER S. KELSO, | ) | (VARLAN/GUYTON) |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Government's Motion to Exclude Defendant Kelso's Proposed Expert Testimony [Doc. 294], filed on January 19, 2009. See 28 U.S.C. § 636(b)(1)(A). On January 16, 2009, the defendant filed a Notice of Christopher Kelso Regarding Expert Testimony [Doc. 293], stating that the defendant may call Attorney John E. Eldridge as an expert on the sentencing practices in Federal Court to offer an opinion on the incentives for persons who would testify against another in the hope of receiving a lesser sentence themselves based upon a downward departure. Kelso asserts that the special knowledge of Mr. Eldridge would assist the jury in understanding the reasons behind the potential bias of such witnesses.

The government asks [Doc 294] the Court to exclude Mr. Eldridge, contending that his proposed testimony is not beyond the understanding of the average juror and, therefore, would be irrelevant, prejudicial, and confusing. It maintains that sentencing is not a jury question and, thus, is irrelevant. Moreover, it argues that the jury can comprehend, without expert testimony, a witnesses' motivation to testify falsely in order to receive a reduced sentence. At the February 18 hearing, the government contended that the proposed expert testimony on witness credibility would

1

invade the province of the jury.

Defense counsel responded orally to the motion at the February 18 hearing. He argued that Mr. Eldridge would testify about the bias of certain government witnesses, not about any witnesses' credibility. Mr. Eldridge will explain how defendants are sentenced and how cooperating witnesses testify in order to receive a substantial assistance motion by the government. Defense counsel argued that such testimony would benefit the jury, would be a better use of time than extensive cross-examination of each witness, and would serve to level the playing field with the government, who planned to use Agent Michael Todd Lee to testify generally about drug conspiracies. He suggested that the jury was far more likely to have some familiarity with drug conspiracies than with the sentencing guidelines.

In 1993 the United States Supreme Court changed the standard for admission of expert testimony in federal courts with its decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Daubert held that Rule 702 of the Federal Rules of Evidence requires a trial court to ensure that scientific testimony is relevant and reliable. Id. at 589.

Rule 702 of the Federal Rules of Evidence provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In Daubert the Court outlined several factors that may be considered by the trial court in assessing the reliability of scientific expert testimony:

1. Is it testable and has it been tested?

2

2. Has it be subjected to peer review?

3. What is the potential rate of error?

4. Is the technique widely accepted in the relevant scientific community?

Daubert, 509 U.S. at 593-94. The factors enumerated in Daubert are not exclusive, and courts have considered other factors, including whether the expert has developed his or her opinions expressly for purposes of testifying or whether the opinions were developed independently of the litigation. In 1999, the Supreme Court broadened the trial court's "gatekeeping" function by applying the factors delineated in Daubert not only to scientific testimony but to all expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-48 (1999).

The trial court has broad discretion in determining whether Daubert's specific factors are, or are not, reasonable measures of reliability in a particular case, General Electric Company v. Joiner, 522 U.S. 136 (1997), and the qualification of an expert witness should be established by a preponderance of proof. See In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 744 (3d Cir. 1994).

The Sixth Circuit Court of Appeals has addressed the issue of whether a criminal defense attorney should be permitted to testify about the impact of sentencing reductions for substantial assistance under the Federal Sentencing Guidelines upon witness credibility. See United States v. Thomas, 74 F.3d 676, 683-84 (6th Cir. 1996), abrogated on other gnds by Morales v. American Honda Motor Co., 151 F.3d 500, 515 (6th Cir. 1998). In Thomas, the Court held that the trial court did not abuse its discretion in excluding the proposed expert testimony under Rule 702because it found that the testimony would not be helpful to the jury, which could understand the incentives to lie on its own. Id. "'[I]t is clearly within the realm of common sense that certain witnesses would have an incentive to incriminate the defendant in exchange for a lower sentence' and that '[t]he

3

credibility of witnesses is a determination for the factfinder . . . .'" Id. at 683 (quoting United States

v. French, 12 F.3d 114, 117 (8th Cir. 1993)).  Moreover, the Court noted that the defendant had the

opportunity to cross-examine the government's witness about his incentive to testify falsely and that

the trial court instructed the jury to view his testimony with caution.  Id. at 684.

    Similarly, in United States v. Henry, the appellate Court again upheld the exclusion of a

criminal defense attorney whom the defendant wanted to testify as an expert regarding the sentences

certain government witnesses were facing and how they could benefit from sentence reductions

under the guidelines.  Nos. 01-6607, 02-5133, 2003 WL 21774005, at *8-10 (6th Cir. 2003), cert.

denied, Rosenboro v. U.S., 540 U.S. 1134 (2004).  In Henry, as in the present case, the defendant

argued that the "purpose of the expert testimony was to demonstrate the witnesses' motives to testify

against [the defendant], rather than to give an opinion on whether or not any or all of the witnesses

were credible."  Id. at *10.  The Court still declined to find an abuse of discretion on the part of the

trial court, particularly in light of the thorough cross-examination and cautionary jury instruction.

Id.

    In the present case, the defendant also seeks to have an expert testify as to the potential

sentencing benefit that the government's witnesses could receive in order to reveal to the jury the

witnesses' motives for bias.  The Court finds that the jury is capable of appreciating the potential

bias of these witnesses without the expert's explanation of the sentencing guidelines.  Although the

jurors may not know the precise sentencing implications of the witnesses' cooperation, such details

of the sentencing guidelines are irrelevant to their understanding of bias.  The Court finds that

defense counsel may cross-examine the government witnesses about the promises made to them by

the government in exchange for their testimony.  This cross-examination will provide ample basis

for the jury to determine the witnesses' credibility with respect to their bias.

Accordingly, the Government's Motion to Exclude Defendant Kelso's Proposed Expert Testimony [**Doc. 294**] is **GRANTED**.

**IT IS SO ORDERED.**

ENTER:

_____s/ H. Bruce Guyton_____
United States Magistrate Judge