UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )
                                    )
v.                                  )       No.:   3:06-CR-147-6
                                    )              (VARLAN/GUYTON)
CHRISTOPHER S. KELSO,               )
                                    )
            Defendant.              )

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Christopher Kelso's ("Kelso's") Motion for New Trial [Doc. 322]. The United States has responded in opposition [Doc. 326]. For the reasons that follow, Kelso's Motion for a New Trial will be **DENIED**.

## I.    BACKGROUND

This criminal case involves a charge of conspiracy to possess with intent to distribute cocaine and a charge of money laundering. The fourth superceding indictment[1] ("the indictment") charged Kelso and co-defendant Brent Devonn Ooten ("Ooten") with conspiracy to possess with intent to distribute cocaine (Count One) and money laundering (Count Two) [Doc. 196]. The indictment also charged defendant and co-defendant Javis Dean ("Dean") with conspiracy to harm a witness (Count Three) [*Id.*]. Prior to trial, Ooten pleaded guilty to Count One and Kelso and Dean proceeded to a five-day jury trial before the Honorable Thomas A. Varlan, United States District Judge.

_____

[1]The Fourth Superseding Indictment, filed on October 16, 2007 [Doc. 196].

At the close of the government's proof, defense counsel for Kelso made a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29. The Court denied the motion. At the close of all proof, defense counsel for Kelso renewed the Rule 29 motion. The renewed motion was also denied by the Court. The jury returned a verdict, finding Kelso guilty of conspiracy to distribute and possession with intent to distribute five (5) kilograms or more of cocaine (Count One) and guilty of conspiracy to commit money laundering (Count Two). The jury found Kelso and Dean not guilty of conspiracy to harm a witness (Count Three).[2] Thereafter, Kelso filed a timely motion for new trial pursuant to Federal Rule of Civil Procedure 33.

## II.    ANALYSIS

Rule 33 of the Federal Rules of Criminal Procedure permits a district court, "[u]pon the defendant's motion . . . [to] vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a); *United States v. Wheaton*, 517 F.3d 350, 360-61 (6th Cir. 2008). In support of his Motion for a New Trial, Kelso raises six arguments: (1) the Court erred in denying Kelso's pretrial motion to suppress; (2) the Court erroneously excluded the testimony of Kelso's expert on the effect of the sentencing guidelines on testifying government witnesses; (3) the Court erred in denying Kelso's motions for judgment of acquittal; (4) the verdicts at trial were against the weight of the evidence; (5)

---

[2]Co-defendant Javis Dean ("Dean") was only charged in Count Three of the indictment, conspiracy to harm a witness [Doc. 196]. Along with Kelso, Dean was found not guilty of this charge [Doc. 321].

2

under the totality of the circumstances, Kelso did not receive a fair trial; (6) and finally, the panel from which the jury was chosen did not represent a fair cross-section representation of minority persons [Docs. 322, 323]. The government has responded in opposition [Doc. 326]. Kelso has not filed a reply. The Court will now address Kelso's arguments in turn.

## A.  The Motion to Suppress

Kelso filed a pretrial motion to suppress [Doc. 259] all evidence seized pursuant to the October 18, 2006 stop and search of the vehicle Kelso was driving. Kelso objected to the reliability of Drug Enforcement Administration Agent Todd Lee's ("Agent Lee's") affidavit (the "Lee Affidavit") and argued that the information in the affidavit was insufficient to establish probable cause for the search of the vehicle and thus, the search violated the Fourth Amendment. The motion was referred to United States Magistrate Judge H. Bruce Guyton for a Report and Recommendation ("R&R"). Magistrate Judge Guyton conducted an evidentiary hearing and issued a thorough R&R recommending that the motion to suppress be denied [Doc. 270]. Kelso objected to the R&R and filed a supplemental motion to suppress [Docs. 273, 275]. This Court, after a *de novo* review, overruled Kelso's objections, accepted in whole the R&R, and denied the motion to suppress [Doc. 289].

Kelso now argues that after having heard the evidence presented at trial, the ruling of the Court was in error and the only proper relief would be a new trial. However, Kelso has indicated no specific evidence or testimony that undermines the findings of the Magistrate Judge and this Court. In opposition, the government asserts that the findings of the R&R and this Court's Order, that the Lee Affidavit was reliable and established sufficient

3

facts to give the officers probable cause to stop the vehicle, arrest Kelso, and search the vehicle for evidence of drug trafficking, were not erroneous. Further, the government contends that there was no testimony or other evidence adduced at trial that disturbed, refuted, or contradicted the findings of the Magistrate Judge and this Court's affirmation of those findings. Therefore, the government argues, the Court's denial of Kelso's motion to suppress was not erroneous and is not grounds for a new trial.

A trial court's evidentiary rulings, even constitutional ones, are subject to review for abuse of discretion. *United States v. Mick*, 263 F.3d 553, 566 (6th Cir. 2001); *Trepel v. Roadway Express, Inc*., 194 F.3d 708, 716-17 (6th Cir. 1999); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997) (stating that "[a]ll evidentiary decisions are reviewed under an abuse-of-discretion standard"). After a review, the Court has determined that there was no testimony or other evidence presented at trial that disturbed or contradicted Magistrate Judge Guyton's findings and this Court's affirmation of those findings. The Court also notes that Agent Lee testified at Kelso's trial and was subject to cross-examination by defense counsel. In addition, the Court has not found, and Kelso has not indicated, any specific evidence or testimony, from either Agent Lee or another witness, that refuted the findings of the R&R and this Court's Order. As such, because Kelso has not called any additional matter to the attention of the Court to suggest that the Court's earlier ruling was erroneous, Kelso's argument that the Court's denial of his pretrial motion to suppress requires a new trial is hereby denied for all the reasons previously stated [Docs. 270, 289].

4

## B.    The Expert Testimony

Kelso filed a notice of expert testimony [Doc. 293], stating that he may call Attorney John E. Eldridge ("Mr. Eldridge") as an expert on sentencing practices in federal court to offer an opinion on the incentives for persons who would testify against another in the hope of receiving a lesser sentence themselves based upon a downward departure.  In the notice, Kelso asserted that the special knowledge of Mr. Eldridge would assist the jury in understanding the reasons behind the potential biases of such witnesses.  The government moved for the Court to exclude Mr. Eldridge's testimony, arguing that the proposed testimony was not beyond the understanding of the average juror and was therefore irrelevant, prejudicial, and confusing [Doc. 294].  The government also asserted that sentencing was not a question for the jury and that the proposed expert testimony on witness credibility would invade the province of the jury.

In a hearing on the motion before Magistrate Judge Guyton, Kelso argued that the offered testimony would not go toward the credibility of any witness but would show how persons are sentenced and how cooperating witnesses testify in order to receive a substantial assistance motion from the government.  After the hearing, Magistrate Judge Guyton issued a Memorandum and Order ("M&O") granting the government's motion to exclude the expert testimony of Mr. Eldridge [Doc. 307].  Kelso objected to the M&O [Doc. 311].  After a thorough review, and finding that the M&O was not contrary to law or clearly erroneous, this Court overruled Kelso's objections [Doc. 313].

Kelso now argues that having heard all the trial testimony, especially the testimony of cooperating individuals, this Court should vacate the verdicts in this case. However, Kelso indicates no specific evidence or testimony in the record to support his argument. In opposition, the government argues that the testimony and evidence introduced at trial in no way affected the decision of the Magistrate Judge and the affirmation by this Court and thus, neither were in error because was both were consistent with statutory and case authorities.

Expert testimony in federal courts is governed by Federal Rule of Evidence 702 and the factors articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc. See Daubert*, 509 U.S. 579 (1993); Fed. R. Evid. 702.[3] The trial court has broad discretion in determining whether the factors in *Daubert* are, or are not, reasonable measures of reliability in a particular case. *See*, *e.g., Gen. Elec. Co.*, 522 U.S. 136.

The United States Court of Appeals for the Sixth Circuit has previously addressed the issue of expert testimony regarding the impact on witness credibility of sentencing reductions for substantial assistance under federal sentencing practices. *See United States v. Thomas*, 74 F.3d 676 (6th Cir. 1996), *abrogated on other grounds by Morales v. American Honda Motor Co.*, 151 F.3d 500, 515 (6th Cir. 1998). In *Thomas*, the Sixth Circuit held that the district court did not abuse its discretion in excluding the proposed expert testimony because

---

[3]Federal Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skills, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

6

the Court found that the testimony would not be helpful to the jury, the defendant had an opportunity to cross-examine the government's witness about any incentive to give false testimony, and the district court gave a cautionary instruction to the jury regarding the testimony of the witness. *Id.* at 683-84. In *United States v. Henry*, the Sixth Circuit addressed a similar issue, with the defendant arguing that the offered expert testimony would not be used to offer an opinion as to the credibility of the witnesses, but would instead demonstrate the motives of the witnesses in testifying. *Henry*, 71 F. App'x. 493, 502-04 (6th Cir. 2003), *cert. denied, Rosenboro v. United States*, 540 U.S. 1134 (2004).

In this case, Kelso was able, and did, cross-examine the government's witnesses on the character, nature, and extent of any plea agreements and about any promises made by the government in exchange for the witnesses' testimony. Counsel for Kelso also suggested, appropriately, that the government would have a role at the time of these cooperating individuals' sentencing hearings in recommending or not to the Court whether to reduce their sentences. Accordingly, the Court finds that the jury was fully aware of any potential biases of the witnesses and was able to determine and weigh the witnesses' credibility with respect to their bias. Accordingly, because the Court has found none, and because Kelso has not cited any statutory or case law supporting his argument, or provided any facts indicating that the findings of the M&O and this Court's affirmation of those findings was in error, Kelso's argument that the exclusion of the proposed expert testimony constitutes grounds for a new trial is hereby denied for the reasons previously stated [Docs. 307, 313].

## C.    Verdicts Were Against the Weight of the Evidence

Kelso also argues that the verdicts were against the weight of the evidence. Specifically, Kelso claims that because the government's case depended largely on the testimony of cooperating witnesses whose testimony could not be corroborated, there should be serious doubts regarding these witnesses' versions of the events and circumstances in this case and thus, when properly weighed, the evidence at trial showed that Kelso was not involved in any criminal activity.

It is well established that a defendant may make a challenge to the sufficiency of the evidence by moving for a new trial on that basis under Federal Rule of Criminal Procedure Rule 33. *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) (stating that a motion for a new trial under Rule 33 "may be premised upon the argument that the jury's verdict was against the manifest weight of the evidence").  Generally, a motion for a new trial under Rule 33 should only be granted "in the extraordinary circumstances where the evidence preponderates heavily against the verdict." *Hughes*, 505 F.3d at 593  (citation omitted).  In considering a Rule 33 challenge to a conviction based on the weight of the evidence, a court can "consider the credibility of the witnesses and the weight of the evidence to insure that there is not a miscarriage of justice.  It has often been said that . . . [the judge] sits as a thirteenth juror."  *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988) (internal quotation omitted).

Kelso argues that the verdicts at trial, finding him guilty of conspiracy to possess five (5) or more kilograms of cocaine, with intent to distribute, in violation of 21 U.S.C. §§

8

841(a)(1) and 846, and guilty of conspiring to launder money in violation of 18 U.S.C. §

1956(h), were against the weight of the evidence. Kelso argues that, while present at the

apparent scene of the crime and having a relationship with a confessed conspirator to the

crime, Kelso himself was not involved in any criminal activity.

To sustain a conviction for drug conspiracy under 21 U.S.C. §§ 841(a)(1) and 846, the

government must prove beyond a reasonable doubt: (1) an agreement to violate drug laws;

(2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy.

*United States v. Layne*, 192 F.3d 556, 567 (6th Cir. 1999) (citing *United States v. Welch*, 97

F.3d 142, 148-49 (6th Cir. 1996). These elements may be shown by either direct or

circumstantial evidence. *See United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997).

As to the first element, the government need not prove the existence of a formal or

express agreement among the conspirators. *Avery*, 128 F.3d at 970. Even a tacit or mutual

understanding between the conspirators, if proved beyond a reasonable doubt, is sufficient.

*Id.* at 970-71. As to the second and third elements, the government must show the willful

membership of the defendant in the conspiracy, but the government need not prove that the

defendant committed an overt act in furtherance of the conspiracy. *Layne*, 192 F.3d at 567.

Further, while the connection between the defendant and the conspiracy need only be slight,

mere association with conspirators is not enough to establish participation. *United States v.*

*Pearce*, 912 F.2d 159, 162 (6th Cir. 1990). Finally, knowledge of and participation in the

common purpose and plan of a conspiracy may be inferred from the defendant's actions and

reactions to the circumstances. *United States v. Barrett*, 933 F.2d 355, 359 (6th Cir. 1991) (citing *United States v. Christian*, 786 F.2d 203, 211 (6th Cir. 1986)).

As to the conviction for conspiring to launder money in violation of 18 U.S.C. § 1956(h), the government is required to prove, beyond a reasonable doubt, that Kelso conspired[4] to violate either 18 U.S.C. § 1956 or § 1957. Establishing the existence of a conspiracy pursuant to § 1956(h) requires the same elements as the establishment of a conspiracy pursuant to 21 U.S.C. § 846, as outlined above. *See United States v. Hynes*, 467 F.3d 951, 964 (6th Cir. 2006) (stating that the government only need prove that the defendant "agreed with another person to violate the substantive provisions of the money-laundering statute during the period alleged in the indictment"); *Whitfield v. United States*, 543 U.S. 209, 214 (2005) (stating that the government need not prove that the defendant committed any overt act in furtherance of a money laundering conspiracy).

Count Two, the money laundering conspiracy charge, alleges a conspiracy to violate 18 U.S.C. § 1956(a)(1)(A)(i). To prove this charge, the government must prove the following elements beyond a reasonable doubt: 1) that the defendant conducted or attempted to conduct a financial transaction which involved the proceeds of an unlawful activity; (2) that the defendant knew the transaction involved proceeds of some form of unlawful activity; (3) and that the defendant intended to promote the carrying on of that unlawful activity. 18

---

[4]Under 18 U.S.C. § 1956(h), the government must prove the existence of a non-overt act conspiracy, that defendant knew of the conspiracy, and that, with knowledge, the defendant became a part of that conspiracy, the object of which violated the money laundering statutes. 21 U.S.C. § 846; *see United States v. Arnold*, 117 F.3d 1308 (11th Cir. 1997) (stating the elements of a non-overt act conspiracy).

U.S.C. § 1956(a)(1)(A)(I); *United States v. Prince*, 627 F. Supp. 2d 863, 865 (W.D. Tenn. 2008). The "knowledge" requirements of the money laundering statute can be proven by either direct or circumstantial evidence. *United States v. Johnson*, 26 F. App'x 441, 446 (6th Cir. 2001) (citation omitted); .

In his Motion for a New Trial, Kelso has not made any reference or citation to specific evidence or testimony that supports his argument that the jury's verdict as to Count One and Count Two were against the weight of the evidence. Kelso only argues that the testimony of the "cooperating individuals" at trial, when properly weighed, should create "serious doubts" regarding these individuals' versions of events. However, upon review by the Court, there is no question in this case that the government put forward sufficient evidence to establish the elements of these charges.

The government produced evidence and testimony at trial that Kelso met the co-conspirators in mid-October 2006 and that Kelso and the co-conspirators took a ride in a vehicle and that Kelso was given five (5) kilograms of cocaine in exchange for a bag of money. The government produced evidence from wiretapped conversations that there was a second trip involving Kelso in which more cocaine was exchanged for more money. The government presented evidence that this transaction was an illegal financial transaction of which Kelso was aware and one which constituted money laundering. Moreover, the jury was confronted with testimony from witnesses Jefferson Biving, Shermund Alsup, and Dex Hines, among others, that indicated Kelso did in fact know what was going on and that Kelso was aware of the existence of the conspiracy and the illegal nature of the transactions. In

11

addition to testimony from the government's witnesses, the jury also heard testimony from Kelso himself in which he stated that he had no idea a conspiracy was going on around him and he had no knowledge of any criminal or illegal activities.

In sum, because the jury heard evidence and testimony both from Kelso and from the government's witnesses, and, because it was the province of the jury to determine which explanation of the circumstances and events was the most credible, the Court finds, that on the evidence and testimony presented, a rational trier of fact could have determined the existence of a conspiracy to distribute drugs and to commit money laundering. Accordingly, because the Court has found no evidence that undermines the jury's determination of the credibility of the witnesses at trial or their versions of the events, and no evidence that the weight of the evidence was against the verdicts, the Court determines that there was no miscarriage of justice and Kelso has not met the burden required for a Rule 33 motion. Accordingly, Kelso's argument that the verdicts were against the weight of the evidence is not well-taken and is hereby denied.

## D.    Denial of the Motions for Judgments of Acquittal

At trial, at the close of the government's proof, defense counsel for Kelso moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a). The motion was denied. Defense counsel renewed his Rule 29 motion at the close of all proof and again, the motion was denied. Kelso now argues that the Court's denial of those motions was in error and thus he is entitled to a new trial.

Rule 29 provides that the district court, either on its own motion, or on the motion of a party, shall enter a judgment of acquittal if the evidence presented is insufficient to sustain a conviction on the charges. Fed. R. Crim. P. 29(a). In evaluating the proof as to a Rule 29 motion, the motion must be denied "if the evidence, viewed in the light most favorable to the government, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt." *United States v. Canan*, 48 F.3d 954, 962 (6th Cir. 1995); *United States v. Nash*, 175 F.3d 429, 432 (6th Cir. 1999). In making this evaluation, the sufficiency of the evidence must be viewed in terms of the entirety of the record. *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984). Circumstantial evidence standing alone may sustain a conviction so long as the totality of the evidence is substantial enough to establish guilt beyond a reasonable doubt. *Id.*

As noted above, the Court previously denied Kelso's Rule 29 motions for judgments of acquittal. While Rule 29 and Rule 33 of the Federal Rules of Criminal Procedure deal with similar issues, the two rules are governed by different standards of review. On a motion for judgment of acquittal, pursuant to Rule 29, a court is required to approach the evidence from a standpoint most favorable to the government, and to assume the truth of the evidence offered by the prosecution. On a motion for new trial pursuant to Rule 33, the power of a court is much broader. A court may weigh the evidence and consider the credibility of the witnesses. *See* CHARLES ALAN WRIGHT, NANCY KING & SUSAN KLEIN, FEDERAL PRACTICE AND PROCEDURE § 553 (3d ed. 2004). Thus, because the Court has determined that Kelso has failed to meet his burden of proving a Rule 33 motion, the Court will not revisit its

13

determination that Kelso failed, at trial, to meet the burden required for a Rule 29 motion. Accordingly, this argument is hereby denied.

## E.     Fair Cross-Section Representation

Kelso also argues that he was denied due process of law and a fair trial because the available jury panel from which the jurors in this case were drawn included no minority persons.[5] In response, the government asserts that Kelso's concerns about the makeup of the jury are untimely and Kelso has failed to carry his burden of proof to establish a *prima facie* violation of the fair cross-section requirement.

As an initial matter, the Court notes that a challenge to the jury is a challenge under Federal Rule of Criminal Procedure 12 and must be brought within a specific time frame. Rule 12(b)(3)(B) provides that "a motion alleging a defect in the indictment or information" must be raised before trial. Fed. R. Crim. P. 12(b)(3)(B). This requirement also pertains to "untimely challenges to grand jury arrays, even when such challenges are on constitutional grounds." *Davis v. United States*, 411 U.S. 233, 238 (1973) (citation omitted). "'Challenges of the petit jury are treated the same as challenges of the grand jury.'" *United States v. Ovalle*, 136 F.3d 1092, 1107 (6th Cir. 1998) (quoting *United States v. Hearst*, 638 F.2d 1190,

---

[5]Kelso's argument here is slightly confusing. In Kelso's Motion for a New Trial he asserted that there was a violation of *Batson v. Kentucky*, 476 U.S. 79, 96-97 (1986) [Doc. 322]. Then, in Kelso's Memorandum in Support of his Motion for a New Trial, Kelso stated that "[he] does not suggest that the government engaged in any improper jury selections as prohibited by *Batson*." [Doc. 323]. Kelso then raises the issue of whether the panel from whence the jury was drawn was representative of minority persons as required by the fair cross-section requirement. Taking Kelso's statement in his supporting memorandum as a clarification of his argument in the motion, the Court will not address Kelso's statement that there was a violation under *Batson* but will only address the fair cross-section issue.

14

1196 (9th Cir. 1980)).  When such Rule 12 claims are not raised within the proper time, the claims are "firmly planted in principles of waiver."  *United States v. Collier*, 246 F. App'x 321, 336 (6th Cir. 2007).  Despite this, under Federal Rule of Criminal Procedure 12(e), "[f]or good cause, the court may grant relief from the waiver."  Fed. R. Crim. P. 12(e). However, in his Motion for a New Trial, Kelso has neither stated nor provided any evidence of "good cause" for his failure to object timely to the makeup of the jury panel.

"The Sixth Amendment requires that the jury venire from which a jury is selected represent a 'fair cross-section' of the community."  *United States v. Odeneal*, 517 F.3d 406, 411-412 (6th Cir. 2008) (quoting *United States v. Allen*, 160 F.3d 1096, 1103 (6th Cir. 1998). A fair cross-section constitutional challenge falls under the ambit of Federal Rule of Criminal Procedure 12(b)(3) and thus must be raised before the start of trial.  *See Ovalle*, 136 F.3d at 1107.  In *Duren v. Missouri*, the Supreme Court held that a defendant may establish a *prima facie* fair cross-section violation by showing:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community;
>
> (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and
>
> (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren*, 439 U.S. 357,  364 (1979).  The government may rebut this *prima facie* case by showing that "a significant state interest [is] manifestly and primarily advanced by those aspects of the jury-selection process . . . that result in the disproportionate exclusion of a

distinctive group." *Id.* at 367-68. *Duren* and its progeny make "crystal clear that a defendant's *prima facie* case includes all three of the above elements and each must be established before the government is required to justify an infringing selection procedure." *Allen*, 160 F.3d at 1103 (finding that while the defendants may have satisfied the first element, the defendants had not met their burden of proving the final two elements); *see Duren*, 439 U.S. at 367-69; *Ford v. Seabold*, 841 F.2d 677, 681 (6th Cir. 1988).

Kelso has the burden of showing the three prongs of the *Duren* test. Kelso has failed to meet this burden. Addressing the first prong, the Court agrees that the minority group identified in Kelso's motion (presumably "African-Americans") is a distinctive group within this community.[6] However, as to the second prong, Kelso has not made any showing that the panel from whence the jury was chosen was not a fair and reasonable representation of the community made up of the counties from which this Court draws its jurors.[7] *Duren*, 439 U.S. at 364-65 (stating that the defendant must demonstrate the percentage of the community made up of the group alleged to be underrepresented). Furthermore, as to the third prong,

---

[6] Kelso does not explicitly designate that the "minority" group to which he is referring are African Americans, but, given Kelso's status as an African American, a racial minority, the Court will assume this is the group to which Kelso refers.

[7] The Knoxville Courthouse serves the Northern Division of the Eastern District of Tennessee. It is the policy of the District Court for the Eastern District of Tennessee "that all litigants in this court entitled to a trial by jury shall have the right to grand and petit juries selected at random from a fair cross-section of the community in each division where the court convenes." [*See* Standing Order *In Re*: Amendment of Jury Plan (amended Feb. 24, 2009), *available at* http://156.125.44.74/docs/local_rules/orders/jury_selection_plan.pdf.] The Northern Division comprises the counties of Anderson, Blount, Campbell, Claiborne, Grainger, Jefferson, Knox, Loudon, Monroe, Morgan, Roane, Scott, Sevier and Union counties. [*Id.*]

16

Kelso has made no showing of a systematic exclusion of a particular group from the jury selection process. As the Sixth Circuit Court of Appeals has stated,

> [D]efendants 'must show more than that their particular panel was unrepresentative. *Duren* requires us to look at the 'venires' from which 'juries' are selected, . . . and it has long been the case that defendants are not entitled to a jury of any particular composition-only to a panel from which distinctive groups were not 'systematically excluded.'

*Ordeneal*, 517 F.3d at 412 (quoting *Allen*, 160 F.3d at 1103 (quoting *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975))). Therefore, because Kelso's objection to the jury is untimely, and because Kelso has done nothing more then make a general assertion that the jury in this case was drawn from a panel that included no minority persons, Kelso's argument for a new trial on these grounds is hereby denied.

## F.      Totality of the Circumstances

Kelso has argued, for the reasons stated above, that the alleged errors in this case have accumulated to a point where Kelso has been deprived of a fair hearing and it is therefore appropriate for this Court to grant a new trial. However, upon the Court's review of Kelso's arguments, the Court has not ascertained any errors which would constitute a new trial. The Court is confident that Kelso's conviction was a result of the evidence against him, and not a result of any errors in either the pretrial litigation matters or the trial itself. As such, the Court finds no accumulation of errors of which a totality of the circumstances might lead to an order for a new trial and therefore, Kelso's Motion for a New Trial on this ground is hereby denied.

17

## III. CONCLUSION

In sum, having found no error in the pretrial litigation matters, no error in the trial itself, sufficient evidence for a reasonable jury to have convicted Kelso of conspiracy to distribute and possession with intent to distribute five (5) kilograms or more of cocaine hydrochloride (Count One) and guilty of conspiracy to commit money laundering (Count Two), no fair cross-section violation, and no accumulation of errors rendering Kelso's trial fundamentally unfair, the Court finds that defendant Christopher Kelso's Motion for a New Trial [Doc. 322] is not well-taken, and is hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE