UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

CHRISTOPHER KELSO,                    )
                                      )
            Petitioner,               )
                                      )
v.                                    )        Nos.:   3:06-CR-147-TAV-HBG-6
                                      )                3:13-CV-583-TAV
UNITED STATES OF AMERICA,             )
                                      )
            Respondent.               )

## MEMORANDUM OPINION

Before the Court now is Petitioner's pro se motion to vacate, set aside, or correct his

sentence pursuant to 28 U.S.C. § 2255 [Doc. 416].[1]  The government responded in opposition

[Doc. 422], and Petitioner replied [Doc. 427].

For the reasons stated below, Petitioner's § 2255 motion [Doc. 416] will be **DENIED**

and **DISMISSED WITH PREJUDICE**.

## I.      BACKGROUND

The facts surrounding Petitioner's convictions were recited by the Sixth Circuit as

follows:

> The events giving rise to this case began in 2004 when Shermond Alsup of
> Knoxville, Tennessee, contacted Jefferson Bivings of Atlanta, Georgia, whom he
> had met in prison, to obtain cocaine for distribution in the Knoxville area. Alsup
> then contacted Dex Hines.  Alsup knew Hines from his neighborhood in
> Knoxville and from previous drug transactions.  Alsup told Hines that he had a
> cocaine source in Atlanta and proposed that the two of them jointly purchase a
> kilogram of cocaine from Bivings, which they would then split and sell
> separately.  Hines agreed.
>
> Alsup and Hines initially began to purchase one kilogram of cocaine from
> Bivings every few weeks; over time, however, they worked their way up to
> purchasing several kilograms twice a month.  The two men picked up the cocaine

---

[1] All citations to the record are found on the docket of Case No. 3:06-CR-147-6.

from Brent Ooten, an associate of Bivings, at Ooten's car wash and other locations in Atlanta. They would bring cash in a bag and give the bag to Ooten, who in turn would give them the cocaine. They would then sell the cocaine in the Knoxville area and use proceeds of those sales to buy more cocaine.

Eventually, Alsup, Hines, Bivings, and Ooten agreed to conduct some of the cocaine transactions in Chattanooga, since it was conveniently located about halfway between Knoxville and Atlanta. The procedure in Chattanooga was much the same as it was in Atlanta: Alsup and/or Hines would drive from Knoxville with the money, and Ooten and/or Bivings would drive from Atlanta with the cocaine and the parties would make a brief exchange. The location for the exchange would be at one of two Chattanooga apartment complexes.

After approximately two years, the conspiracy expanded. Hines testified that he took [Petitioner], a long-time friend, fellow motorcycle club member, and cocaine customer who was currently selling to individuals in the Knoxville area, into the conspiracy to take his place. [Petitioner], according to Hines, wanted to get involved with Bivings so that he could obtain more cocaine and make more money. As Hines put it, "I was introducing [Petitioner] to [Alsup, Bivings, and Ooten]. I was going to be done with it . . . . [Petitioner] will be doing it on his own."

The introduction came in late September or early October 2006 when Hines brought [Petitioner] with him to Chattanooga to purchase five kilograms of cocaine from Bivings. Hines testified that on this trip [Petitioner] contributed some money so that he could obtain a portion of the cocaine for himself. Because Hines did not tell Alsup that [Petitioner] would be accompanying him, and because Bivings spoke only to Alsup on the phone, Bivings was surprised and concerned to see [Petitioner] at the exchange.

Nonetheless, [Petitioner] went on the next trip too. On October 18, 2006, [Petitioner] accompanied Hines and Alsup to Chattanooga to purchase seven kilograms of cocaine from Bivings. [Petitioner] knew that he was going to be transporting cocaine, agreed to do so in exchange for compensation from Alsup and Hines, and contributed $7,000 of his own money for the cocaine purchase. Hines and [Petitioner] rode together in [Petitioner]'s wife's Toyota Highlander, while Alsup drove his own vehicle. After stopping for breakfast, the men went to meet Ooten.

The meeting did not go as planned. As [Petitioner] and Hines neared the apartment complex, Hines spotted what he believed to be an unmarked police vehicle, and he and [Petitioner] drove away. Hines, it turned out, was correct in his identification of the unmarked police vehicle: the Drug Enforcement Administration ("DEA") had been tracking their cocaine distribution activities via

2

a wiretap and had been surveilling the transaction. Alsup and Ooten attempted to arrange a meeting at the alternative location, but were unsuccessful.

The men were subsequently arrested. Alsup was pulled over by DEA agents in Chattanooga. Hines and [Petitioner] were also detained in Chattanooga, though not before agreeing that if they were arrested, they would say that they had traveled to Chattanooga to look at some motorcycles, which seemed plausible to them given that they had looked at motorcycles together before. And Ooten was apprehended by Fort Oglethorpe police officers in Georgia.

*United States v. Kelso*, 468 F. App'x 551, 552–53 (6th Cir. 2012).

On October 16, 2007, a federal grand jury for the Eastern District of Tennessee filed a three count indictment against Petitioner, charging Petitioner with conspiracy to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A) (count one); conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (count two); and conspiracy to cause and attempt to cause bodily injury to another person, in violation of 18 U.S.C. § 1513(b)(2) and (e) (count three) [Doc. 196].

On March 6, 2009, after a jury trial, Petitioner was convicted of counts one and two of the indictment [Doc. 321]. Petitioner later moved for a new trial [Doc. 377], but the Court denied Petitioner's motion as meritless [Doc. 383]. Petitioner was sentenced to a term of life imprisonment as to count one, and 240 months as to count two, to be served concurrently [Doc. 385]. The judgment was affirmed on appeal by the Sixth Circuit [Doc. 406]. The Supreme Court denied certiorari on October 12, 2012 [Doc. 411].

On September 30, 2013, Petitioner filed a motion pursuant to 28 U.S.C. § 2255 raising multiple theories of ineffective assistance [Doc. 416]. The matter is now ripe for review.

## II. TIMELINESS

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the one-year statute of limitations applicable to collateral challenges under § 2255 runs from the latest of:

(1) "the date on which the judgment of conviction becomes final;" (2) "the date on which the impediment to making a motion created by Governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such Governmental action;" (3) "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme court and made retroactively applicable to cases on collateral review;" or (4) "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f). In the case of a direct appeal, a petitioner's conviction becomes final upon either denial of certiorari or expiration of the ninety-day period in which to seek such review. *Clay v. United States*, 537 U.S. 522, 525, 532 (2003). As the Supreme Court denied certiorari on October 12, 2012 [Doc. 411], Petitioner's conviction became final for the purposes of § 2255(f) on that date. Consequently, Petitioner's one-year period for requesting relief under § 2255 expired on October 12, 2013. The original petition—filed on September 30, 2013—falls safely within the permissible period for requesting collateral relief.

## III.   STANDARD OF REVIEW

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

4

Petitioner alleges ineffective assistance of counsel under multiple theories as his sole ground of collateral challenge in his petition [Doc. 416]. For the reasons discussed herein, none of Petitioner's claims of ineffective assistance have merit.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013) (applying the *Strickland* test to an ineffective assistance of counsel claim). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *Strickland*, 466 U.S. at 687, as measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel's assistance is presumed to have been effective, and a petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, a petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove that he sustained prejudice, the Court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in

5

trial counsel's representation did not warrant a new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

Petitioner asserts nine theories of ineffective assistance. As several of these theories overlap, the Court will address the theories as follows: (1) failing to present exculpatory evidence on Petitioner's behalf (grounds one, three, and four) [Doc. 416 pp. 7–9, 14–18]; (2) failing to properly address the denial of Petitioner's motion for new trial (ground two) [*Id*. at 10–11]; (3) failing to properly cross-examine government witnesses regarding prior inconsistent statements (ground five) [*Id*. at 19–20]; (4) not objecting to, or investigating, the absence of African Americans in the jury pool (ground six) [*Id*. at 20–21]; (5) failing to object to the Court's admission of certain evidence under Federal Rule of Evidence 404(b) (ground seven) [*Id*. at 24–25]; (5) failing to object to the presentation of allegedly false testimony by the government (ground eight) [*Id*. at 26–27]; and (6) failing to bring to the Court's attention the presence of a second verdict form that indicated Petitioner was not guilty on all counts of the indictment (ground nine) [*Id*. at 28–29].

## A. Failing to Present Exculpatory Evidence

Petitioner's first three theories of his collateral attack center on counsel's alleged failure to present exculpatory evidence on Petitioner's behalf [Doc. 416]. Specifically, Petitioner alleges that counsel (1) failed to present statements and testimony from Dexter Hines, Shermond Alsup, and Agent Todd Lee that would "prove [Petitioner] was factually and actual[ly] innocent" (ground one) [*Id*. at 7]; (2) failed to present exculpatory evidence offered by Petitioner's wife (ground three) [*Id*. at 14]; and (3) failed to call Camille Calloway and Carl Allen as witnesses to testify to Petitioner's innocence (ground four) [*Id*. at 16–17]. The Court will address each of these theories in turn.

6

1.    **Failure to Present Statements from Dexter Hines, Shermond Alsup, and Agent Todd Lee**

Petitioner argues that counsel provided ineffective assistance because he did not present statements from Dexter Hines, Shermond Alsup, and Agent Todd Lee. The Court will first address Hines, and then Alsup, and lastly, Lee.

a.    **Dexter Hines**

First, Petitioner claims that counsel was deficient for failing to offer evidence that Hines, prior to identifying Petitioner as a participant, originally told police that Petitioner "had nothing to do with the alleged conspiracy" [Doc. 416-6 ¶ 4]. Petitioner argues that the presentation of such evidence would have proven that Petitioner was "factually and actually innocent" and that counsel's performance fell below an objective standard of reasonableness when he failed to address these inconsistencies during trial [Doc. 416 p. 7].

A preliminary review of the record shows that counsel did, however, ask Hines about the previous inconsistent statement [Doc. 330 pp. 81–88]. A portion of that questioning proceeded as follows:

Q.    And I want to ask you a little bit more detail about what you indicated in that meeting. All right? Apparently you indicated that Chris Kelso did not know anything about yours and Alsup's purchasing cocaine in Chattanooga on that date?

A.    Yes.

. . .

Q.    . . . And would you agree, without getting into all of the details, that what you related on November the 9th after you have met with your attorney and after you have talked about cooperation is a significantly different story than what you related on October 30th, correct?

A.    Yes

7

[*Id.* at 81, 88]. This questioning establishes that counsel did challenge the inconsistencies in Hines's statements regarding Petitioner's involvement in the conspiracy. As such, Petitioner cannot show counsel deviated from professional norms on that basis.

The Court need not reach the question of whether any prejudice existed because Petitioner's insufficient showing of deficient performance obviates the need to do so. *See, Strickland*, 466 U.S. at 697 (finding "no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the [petitioner] makes an insufficient showing on one"). Consequently, Petitioner is not entitled to relief on the basis of counsel's failure to present statements and testimony of Hines.

### b. Shermond Alsup

Turning to the testimony of Shermond Alsup, Petitioner claims counsel was deficient for failing to present Alsup's testimony because it, too, would have proven Petitioner's innocence. However, Petitioner has failed to set forth facts demonstrating how Alsup's testimony is relevant to this claim, or that he was prejudiced by the absence of it. *Id.* at 694. Because Petitioner bears the burden in an ineffective assistance of counsel claim, and has failed to present any evidence of deficient assistance or prejudice, this claim cannot succeed.

### c. Special Agent Todd Lee

Next, with reference to Special Agent Todd Lee, it is the Court's understanding, based on Petitioner's notations in the margins of the attached criminal complaint, that Petitioner believes counsel was primarily deficient for failing to address the lack of identification of Petitioner in Lee's statement [Doc. 416-7 p. 2]. It appears that Petitioner is attempting to argue that none of the individuals caught in the intercepted phone conversation refer to Petitioner by name, and therefore Lee's statement fails to identify Petitioner as a participant [*Id.*]. Petitioner has also

8

noted a variety of other perceived weaknesses in Lee's statement that the Court presumes Petitioner asserts counsel should have addressed [*Id.*]. In one such instance, and in response to a portion of Lee's statement regarding the arrival time of the drug delivery, Petitioner questions, "If you know the man with the cocaine will be there in 15 minutes how they got away with no police chase? [sic]" [*Id.*].

While it is true that counsel did not challenge the lack of identification in the intercepted phone conversations, nor did he question the lack of a police chase during the drug bust, his failure to do so does not amount to ineffective assistance of counsel under these facts. To start, there is no requirement that an individual be addressed by name by a co-conspirator in order to show that the individual was in fact involved in the crime. "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Arias v. Lafler*, 511 F. App'x 440, 448 (6th Cir. 2013) (quoting *Rogers v. Mo. Pac. R. Co.,* 352 U.S. 500, 508 (1957)). Further, there is no requirement of proof necessitating a police chase to show the existence of a drug exchange.

The failure to raise a meritless argument does not constitute ineffective assistance of counsel. *See, e.g., Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("Counsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel."). In addition, in light of the substantial evidence against Petitioner, if counsel had addressed the issues described regarding Lee's testimony, there is not a reasonable probability that the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 694.

In sum, Petitioner is not entitled to relief due to counsel's alleged deficiencies in regard to Lee.

## 2. Failure to Present Exculpatory Evidence Offered by Petitioner's Wife

Petitioner second theory of ineffective assistance of counsel alleges that counsel was deficient for failing to introduce exculpatory evidence made available to him by Petitioner's wife while she was a witness during his trial [Doc. 416 p. 14]. Specifically, Petitioner alleges counsel failed to "bring to the attention of the Court, evidence of co-defendant's acknowledgment and confession to [Petitioner's] wife that [Petitioner] was innocent of the charges outlined by the government" [*Id*.]. Petitioner claims counsel's failure to present available evidence that supported Petitioner's innocence was objectively unreasonable and that Petitioner suffered prejudice as a result [*Id*.].

In response, the government argues that counsel did not fail to present exonerating evidence to the jury as Petitioner has suggested [Doc. 422 p. 6]. The government contends that counsel did, in fact, call Petitioner's wife at trial "so that she could tell the jury about having allegedly been told by Hines that petitioner 'had nothing to do' with the drug conspiracy" [*Id*.]. The government asserts that Petitioner has, as a result, failed to demonstrate that counsel performed deficiently or that Petitioner was prejudiced as a result [*Id*.].

Upon review, the Court finds Petitioner's claim is contradicted by the record [Doc. 401]. Contrary to Petitioner's assertions, counsel did elicit testimony from Petitioner's wife regarding his involvement in the drug exchange. During trial, and in reference to the conversation between Hines and Petitioner's wife about the incident, counsel explicitly asked Petitioner's wife, "[w]hat did Mr. Hines say?" to which she replied, "Basically he just told me that they was [sic] going down there to get a motor. . . . Finally he said, you know, that, you know, [Petitioner] didn't have really nothing [sic] to do with it" [*Id.* at 26].

The record demonstrates that counsel elicited information from Petitioner's wife regarding Petitioner's innocence and specifically questioned her regarding Hines's statements about Petitioner's lack of involvement in the conspiracy. Because the record shows that counsel did what Petitioner claims counsel did not do, Petitioner has failed to demonstrate deficient assistance on this basis; his claim under this theory fails.

### 3. Failure to Call Camille Calloway and Carl Allen as Witnesses

As to Petitioner's third theory or relief, he claims that counsel "could have but did not investigate or call witnesses" Camille Calloway or Carl Allen, as Petitioner requested [Doc. 416 p. 16]. Petitioner argues that the absence of those witnesses—who allegedly would have testified that Hines and Alsup "would sometimes use people who had no knowledge of what they were doing" during drug exchanges—resulted in prejudice [*Id.*].

The government, in opposition to Petitioner's claim, asserts that not only has Petitioner failed to show that counsel was deficient in not calling the suggested witnesses, but also that he failed to show that counsel ever had reason to know the witnesses were available to him or that they had testimony to offer on Petitioner's behalf [Doc. 422 p. 6]. Moreover, the government argues that in addition to Petitioner's failure to show deficient assistance, he has also failed to show prejudice [*Id.*]. The government asserts that while Petitioner may claim that the witnesses could have offered evidence to prove his innocence, the affidavits of the witnesses presented by Petitioner contain no exculpatory evidence [*Id.*]. Thus, the government argues, the presentation of such evidence would likely have no effect on the outcome of the trial and, as a consequence, leaves Petitioner unable to demonstrate prejudice [*Id.* at 7].

Upon review, the Court notes that Petitioner's § 2255 motion includes a letter from Trevor Atchley, an attorney shadowing counsel during his representation of Petitioner, that

addresses the issue of counsel's failure to call Camille Calloway and Carl Allen as witnesses [Doc. 416-2]. In the letter, Atchley describes meeting with Petitioner and counsel during the final preparation for trial and writes that "no mention was made of the two individuals," nor was there, at any point, "anyone asking . . . about providing testimony that could have been of assistance to the defense of the case" [*Id.*]. Because there is no evidence in the record that counsel had a reason to consider Calloway and Allen as potential witnesses, he has failed to demonstrate that counsel was deficient for failing to present them as such.

However, even if the Court accepts Petitioner's claims as true, Petitioner has failed to set forth facts demonstrating he was prejudiced by the absence of the relevant testimony. On review of the affidavits of Calloway and Allen, the Court finds that each only offers that Hines was looking for an individual to help pick up motorcycle parts [Docs. 416-3, 416-4]. The affidavits do not offer any evidence to support Petitioner's claim that he did not conspire with Hines to distribute cocaine [*Id.*]. Further, while the affidavits may supplement Petitioner's claim that he did not know Hines was intending to participate in any sort of drug deal when he agreed to accompany him to Chattanooga, the Court finds that counsel presented such evidence during trial through other witnesses. The jury convicted Petitioner in spite of that evidence, and Petitioner has failed to demonstrate that he has suffered any prejudice based on the omission of these witnesses.

Because *Strickland* requires a showing of both deficient assistance and prejudice, neither of which was successfully demonstrated by Petitioner under any sub-theory, his claims of ineffective assistance based on counsel's failure to object to present exculpatory evidence cannot succeed.

**B.** **Ineffective Assistance for Failing to Properly Address the Denial of Petitioner's Motion for New Trial**

Petitioner's forth theory of ineffective assistance alleges counsel was "objectively unreasonable" during direct appeal for failing to sufficiently challenge the Court's denial of Petitioner's motion for new trial [Doc. 416 p. 10]. Petitioner contends that the Sixth Circuit deemed the argument waived because counsel "did not argue or explain how the standard of the elements were satisfied in the case" [*Id*.]. Petitioner claims that he was prejudiced by counsel's failure to develop the appellate challenge [*Id*.].

The government, in response, argues that even if counsel's actions were proven to be deficient, Petitioner has failed to "demonstrate that he was prejudiced by those actions because his challenge to this Court's denial of his new trial motion lacked merit" [Doc 422 p. 12].

In his motion for new trial [Doc. 378], Petitioner argued that he was entitled to a new trial on grounds of newly discovered evidence. Fed. R. Crim. P. 33(b)(1). The newly discovered evidence that served as the basis for Petitioner's argument consisted of information that witnesses Alsup and Hines, who testified for the government, corroborated their testimony before testifying at trial [*Id*. at 4–5]. The Court found that the newly discovered evidence failed to reach the level of materiality required for a successful Rule 33(b) motion for new trial and that the evidence would not be likely to produce an acquittal [*Id*. at 6]. The Court explained that "the credibility of Alsup and Hines was already limited, by either their own inconsistent statements or their potential biases" and that "even without the testimony of Alsup and Hines, the government presented sufficient evidence at trial by which a reasonable jury could have convicted [Petitioner] of the charges against him" [*Id*. at 8–9]. Petitioner's claim was found to be meritless and subsequently denied [*Id*. at 12]. Petitioner has not offered any argument or evidence that the

13

Sixth Circuit would have reached a different conclusion on appeal had the challenge not been waived. Petitioner has therefore failed to establish the prejudice necessary for a successful claim of ineffective assistance of counsel. His claim under this theory fails as a result.

### C. Ineffective Assistance for Failing to Properly Cross-Examine Government Witnesses Regarding Prior Inconsistent Statements

Petitioner's fifth theory of ineffective assistance of counsel alleges trial counsel rendered constitutionally deficient assistance by failing to properly cross-examine Special Agent Todd Lee regarding inconsistencies in his statements made at trial and those he made to the grand jury [Doc. 416 p. 19]. Specifically, Petitioner claims counsel failed to address that Lee's statements to the grand jury—which indicated that intercepted calls verified Petitioner's involvement in the conspiracy—were proven to be false by Lee's own statements during trial [*Id.*].

In response, the government argues that Petitioner has failed to establish any discrepancies between Lee's trial testimony and the testimony he gave to the grand jury [Doc. 422 p. 10]. The government contends that "[w]hile petitioner baldly alleges such an inconsistency and claims that the trial transcript proves it, nothing in the trial transcript indicates that Special Agent Lee provided any false information to the grand jury" [*Id.*]. Further, the government points out that trial counsel questioned Lee about his investigation, and that nothing in the transcript indicates counsel's cross-examination was inconsistent with prevailing professional norms [*Id.*].

Petitioner alleges that Lee provided grand jury testimony that "Hines was bringing down a third party and that third party was [Petitioner]" but then at trial "all but admitted the Grand Jury testimony was false" [Doc. 416 p. 19]. However, as the government points out, Petitioner fails to offer any trial testimony to substantiate that particular claim. The Court is unable to find

14

anything in Petitioner's cited portion of the trial transcript, or any portion of the trial transcript relevant to Lee's testimony, that reveals inconsistencies in his statements. To that end, counsel would be unable to cross-examine Lee regarding inconsistencies in his statements when there is no evidence of such inconsistencies. Counsel cannot be held to be deficient under these circumstances.

Additionally, while Petitioner claims that counsel failed to cross examine Lee about the alleged inconsistencies, Petitioner has managed to cite to the portion of the trial transcript where counsel cross-examines Lee and, as Petitioner claims, counsel's questioning led Lee to "all but [admit]" that his grand jury testimony was false [Doc. 416 p. 19 (citing Tr. T. pp. 257–58)]. It would seem to the Court, assuming all of Petitioner's claims were true, that if Petitioner believes there is a point at which Lee was made to admit inconsistencies, counsel was successful in his cross examination and therefore provided representation that was consistent with prevailing professional norms.

Because Petitioner has failed to demonstrate deficient assistance by counsel, Petitioner's claim of ineffective assistance under the present theory must fail.

### D.     Ineffective Assistance for not Objecting to, or Investigating, the Absence of African Americans in the Jury Pool

In his next claim, Petitioner contends that counsel was ineffective for failing or object to the absence of African Americans in the venire from which the jury hearing his case was selected [Doc. 416 p. 21]. Petitioner further claims that counsel was ineffective for failing to investigate whether the individuals selected for the venire came from a "fair cross-section of the community" in which he was charged, or whether there was a "systematic problem" causing the

absence of African American individuals in a pool of forty jurors [*Id.*]. Petitioner claims that he was prejudiced as a result [*Id.*].

In response, the government argues Petitioner's claim is simply without merit [Doc. 422 p. 11]. The government argues that the Sixth Circuit has previously reviewed the district's jury selection procedures and found that they "do not run afoul" of rules regarding the same [*Id.*]. *See United States v. Clark*, 112 F. App'x 481, 485 (6th Cir. 2004). The government asserts that Petitioner does not allege or establish sufficient facts to demonstrate counsel should have objected to or investigated the make-up of the venire and therefore cannot demonstrate deficient assistance [*Id.* at 12].

The Sixth Amendment requires that the jury venire from which a jury is selected represent a "fair cross-section" of the community. *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975). To establish a violation of this requirement, it must be shown that: (1) the group alleged to be excluded is a distinctive group in the community; (2) the representation of the group is not fair and reasonable in relation to the number of persons in the community; and (3) "systematic exclusion" in the jury-selection process accounts for the underrepresentation of the excluded group. *Berghuis v. Smith*, 559 U.S. 314, 314 (2010) (citing *Duren v. Missouri,* 439 U.S. 357, 364 (1979)). The Sixth Circuit has explicitly rejected the argument that if a particular jury panel contains no African Americans, representation of that group is inherently unfair or unreasonable. *Clark*, 112 F. App'x at 486 n.1. Further, the Sixth Circuit has provided "that defendants are not entitled to a jury of any particular composition—only to a panel from which distinctive groups were not 'systematically excluded.'" *United States v. Allen*, 160 F.3d 1096, 1103 (6th Cir. 1998). Consequently, Petitioner must show not only that their particular panel was

unrepresentative, but also "that members of a race were under-represented in other jury pools in that district during the relevant time period." *Clark*, 112 F. App'x at 486.

Here, it is arguable that Petitioner has been successful in identifying the exclusion of a distinctive group in the community as is required under the first prong in *Berghuis*. However, Petitioner fails to demonstrate unfairness in that representation as is required by the second prong because, as stated above, a jury lacking in diversity, without more, is not inherently unfair. *Clark*, 112 F. App'x at 486. Further, Petitioner offers no evidence of "systematic exclusion" required under the third prong of *Berghuis*. Because Petitioner cannot show that the jury itself was improper, he cannot demonstrate that counsel was deficient for failing to object to the makeup of the jury. *See e.g., United States v. Sanders*, 404 F.3d 980, 986 (6th Cir. 2005) ("Counsel cannot be ineffective for failing to object to what was properly done."). Moreover, assuming that counsel had objected under the facts as they stand, Petitioner has failed to show that the objection would have succeeded and somehow changed the outcome of his trial. The Court finds Petitioner's claim is without merit.

### E. Ineffective Assistance for Failing to Object to the Court's Admission of Evidence Under Federal Rule of Evidence 404(b)

Petitioner's next theory alleges counsel was ineffective for failing to object to the Court's admission of certain evidence under Federal Rule of Evidence 404(b) [Doc. 416 p. 24]. Petitioner fails to indicate what "404(b) type evidence" with which he takes issue,[2] fails to

---

[2] Petitioner cites to several pages in the transcript to show instances of admission of evidence under 404(b) [Doc. 416 p. 23]. However, the cited transcript pages are inaccurate in that they either show the admission or omission of evidence under a different rule or show no admission or omission of evidence at all.

17

establish why counsel was ineffective for failing to object to it, and fails to demonstrate how the admission of such evidence has prejudiced his particular trial.

The government, guessing at what evidence Petitioner is referring to, argues that the only evidence offered in Petitioner's trial that triggered Rule 404(b) was admissible to prove Petitioner "was not simply an innocent victim of circumstance, but rather was a knowing participant in the drug conspiracy" [Doc. 422 p. 8]. The government argues that Petitioner has not offered "any legitimate basis on which rule 404(b) evidence in his case could have been excluded had counsel objected to its admission" and, as a result, has failed to demonstrate prejudice [*Id.*].

Counsel's assistance is presumed to have been effective, and Petitioner bears the burden of showing otherwise. *Mason*, 320 F.3d at 616–17. Aside from Petitioner's assertion that counsel failed to object to the Court's admission of "404(b) type evidence," Petitioner offers no evidence of deficient assistance or prejudice to substantiate a claim of ineffective assistance. Because Petitioner has failed to meet his burden of demonstrating deficient assistance and prejudice, thereby failing to satisfy the two-part test set forth in *Strickland*, the Court finds Petitioner's present claim of ineffective assistance is without merit. 466 U.S. at 687.

In the alternative, and assuming the government has identified the proper 404(b) type evidence at issue—specifically, testimony from Lumari Harshaw regarding Petitioner's distribution of cocaine from 2003 to 2005—the Court finds that Petitioner's claim fails for lack of merit. Permitted uses of evidence of prior bad acts under Federal Rule of Evidence 404(b) include offering such evidence to prove intent and knowledge. Because, in the present case, this

evidence was offered to prove Petitioner's intent, admitting it as offered was not improper.[3]  As such, it would not be unreasonable for counsel to choose not to object to the admission of such evidence offered on those grounds.  Consequently, Petitioner's claim under this theory fails.

### F.  Ineffective Assistance for Failing to Object to the Presentation of Allegedly False Testimony Offered by the Government

Petitioner's eighth ineffective assistance of counsel claim alleges trial counsel rendered constitutionally deficient representation when he failed to object to allegedly false testimony offered by the government [Doc. 416 p. 26].  Petitioner claims that the government knew or ought to have known "that they were using perjured testimony" when offering the testimony of Dex Hines as evidence against Petitioner [*Id.*].  Petitioner contends that counsel acted "unprofessionally" by failing to timely object or raise the issue on direct appeal [*Id.*].

In response, the government argues that Petitioner has failed to offer any evidence that the government knowingly presented false testimony or that any of the offered testimony was, in fact, false [Doc. 422 pp. 8–9].  The government points out that counsel did cross examine Hines about his prior inconsistent statements, rather than accusing the government of presenting false testimony, which the government suggests was a reasonable decision in light of the circumstances [*Id.*].

In order to succeed in this claim, Petitioner would have to demonstrate to the Court that counsel's decision not to object to the allegedly false evidence offered by the government was

---

[3]  The Court also notes the giving of a limiting instruction to the jury, telling the jury not to consider this "evidence to prove the proposition that because the defendant may have done those other acts he, therefore, did the acts that he is on trial for" [Doc. 398 pp. 93–94].  Instead, the Court instructed the jury to "consider those other acts only for the purpose of determining the defendant's intent, if any, with respect to the acts which are the subject of the charges in this case" [*Id.* at 94].

19

unreasonable. *Strickland*, 466 U.S. at 689. A failure to object to false or perjured testimony might be considered unreasonable if counsel knew or ought to have known that the evidence offered was, or was known to be, false. *See United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) ("The burden is on the defendant to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony."). However, Petitioner has offered no evidence, outside of conclusory statements, that substantiates a claim that Hines's testimony was false, that the government knew Hines's testimony was false when it was offered as evidence, or that counsel knew that the testimony was false when he chose not to object. As such, Petitioner has given the Court no reason to find counsel's decision not to object to the presentation of the evidence at issue unreasonable.

Because Petitioner has failed to show that counsel did not provide "reasonably effective assistance" as is required under *Strickland*, Petitioner's claim of ineffective assistance under this theory fails.

### G.   Ineffective Assistance for Failing to Notify the Court of the Existence of a Second Verdict Form

Petitioner's final claim alleges that counsel was deficient for failing to bring to the Court's attention the existence of an alternate verdict form that was signed by the foreperson but not entered [Doc. 416 p. 28]. Petitioner alleges counsel's failure to notify the Court of the second verdict form was objectively unreasonable because the second verdict form, unlike the first, found him not guilty as to all charges [*Id.*]

In response, the government argues that while the two verdict forms are generally similar, they are different in three important respects [Doc. 422 p. 10]. First, the verdict form on record indicates the jury found Petitioner guilty of counts one and two, while the verdict form offered by Petitioner finds him not guilty on all charges [*Id*.]. Second, while both forms are alleged to have been signed by the jury's foreperson, the form offered by Petitioner is filled out in different handwriting [*Id*.]. Third, the verdict form on record has a redacted signature, while the one offered by Petitioner does not [*Id*.]. The government suggests that these differences "strongly indicate that Petitioner is simply trying to fabricate evidence and that his ineffective assistance of counsel claim is completely devoid of merit" [*Id*.].

The verdict form on record [Doc. 321], the version finding Petitioner guilty of counts one and two and that bears an official filing stamp from this Court, is consistent with the criminal minutes [Doc. 319] entered in connection with Petitioner's trial. There is no evidence in the record, aside from Petitioner's questionable attachment, that indicates a second verdict form ever existed, or that the jury ever intended an alternate verdict form to be entered. The Court finds Petitioner's claim of the existence of a second verdict form suspicious and not credible. Consequently, Petitioner's claim that counsel was ineffective for failing to bring the form to the Court's attention is without merit.

## V. CONCLUSION

For the reasons discussed above, Petitioner's § 2255 motion [Doc. 416] will be **DENIED** and **DISMISSED WITH PREJUDICE**. The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Fed. R. App. P. 24. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a

certificate of appealability **SHALL NOT ISSUE**.  28 U.S.C. § 2253; Fed. R. App. P. 22(b).  The

Clerk of Court will be **DIRECTED** to **CLOSE** Case No. 3:13-CV-238.

      **ORDER ACCORDINGLY.**

            s/ Thomas A. Varlan
            CHIEF UNITED STATES DISTRICT JUDGE